# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **RONALD JENNINGS** | : | **DOCKET NO. 11-cv-02016** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **BURL CAIN, WARDEN** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is an application for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 filed *pro se* by Ronald Jennings (hereafter "petitioner"). Doc. 1. Petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections and is currently incarcerated at the Louisiana State Penitentiary at Angola.

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

### I.
#### FACTS AND PROCEDURAL HISTORY[1]

### A.  Conviction and Direct Appeal

On October 27, 2006, petitioner was found guilty of second degree murder of his wife's grandmother by a jury sitting in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana. Doc. 4, p. 1.  On November 20, 2006, he was sentenced to life imprisonment without

---

[1] Page numbers listed in citations to this record reference the number found in the banner of the document as it is assigned by CM/ECF and does not refer to any page number that may have been assigned by another source.

benefit of parole, probation, or suspension of sentence. *Id.* Petitioner appealed to the Third Circuit Court of Appeal and his conviction was affirmed. *State v. Jennings*, 958 So. 2d 144 (La. Ct. App. 3d Cir. 2007). Petitioner's request for review to the Louisiana Supreme Court was denied. *State v. Jennings*, 973 So.2d 731 (La. 2008). It does not appear from the record that petitioner sought further relief from the United States Supreme Court.

### B.  State Collateral Review

Petitioner sought collateral relief through the State of Louisiana by filing an Application for Post-Conviction relief on December 2, 2008. Doc. 28, Att. 6, pp. 33–48.[2] Petitioner complained of lack of sufficiency of evidence, bias of jurors and prejudicial comment by the prosecutor during voir dire, and ineffective assistance of counsel. At a hearing held October 16, 2009, the state court judge denied petitioner's application finding he received adequate assistance of counsel. Doc. 28, Att. 6, pp. 218–19.

Petitioner timely sought review of the trial court's ruling. Doc. 8, pp. 150–77. On September 8, 2010, the court of appeal denied the writ as it related to petitioner's claim of ineffective assistance of counsel but remanded the matter to the trial court for consideration of lack of sufficiency of evidence and bias of the jurors. Doc. 8, p. 178. Thereafter the district court denied petitioner's claims on those two remaining issues. Doc. 12, Att. 1, pp. 2–4. Petitioner again sought review from the Louisiana Court of Appeal for the Third Circuit on the trial court's denial of the two remanded claims. The court of appeal concluded that the evidence was sufficient and that petitioner's jury bias claim was precluded as he had failed to exhaust his peremptory challenges during jury selection. Doc. 12, Att. 1, p. 5. All issues raised in the petition

---

[2] The actual petition filed in the district court can be found at Doc. 8, p. 27 but it is merely a one page document. Petitioner obviously intended to bring forth his claims through his memorandum attached to the petition. Although found elsewhere in the record of this proceeding we will refer to the version of the memorandum found at Doc. 28, Att. 6, pp. 33–48.

for collateral review filed with the trial court were raised with the court of appeal in petitioner's writ application to it.

Petitioner filed an application for supervisory writ with the Louisiana Supreme Court and that application was denied September 14, 2012. *State ex rel. Jennings v. State*, 97 So.3d 1011 (2012); Doc. 12, Att. 1, p. 5. All issues raised in the petition for collateral review filed with the trial court and with the court of appeal in petitioner's writ application to it were also raised in the writ application to the highest court.

### C. *Habeas* Application

The present complaint was filed in this court on November 16, 2011, which was after the Louisiana Supreme Court denied petitioner's writ on the issue of ineffective assistance of counsel but while there were still pending the two issues that had been remanded by the court of appeal to the district court. At petitioner's request this matter was stayed pending completion of his state court proceeding. Doc. 9. After completion of the state court review petitioner supplemented his complaint and the stay was lifted. Doc. 13.

In this complaint as supplemented petitioner maintains his writ should be granted because:

> (1)     The trial court erred when it denied petitioner's Motion to Suppress two inculpatory statements. Doc. 4, Att. 1, pp. 9–11.

> (2)     Petitioner was denied effective assistance of counsel. Doc. 4, Att. 1, pp. 11–38. Specifically petitioner complains his counsel failed in that:

>> a.     Counsel did not advance a *pro se* Motion to Suppress filed by petitioner; Doc. 4, Att. 1, pp. 17–21;

>> b.     Counsel did not raise the issue of petitioner's intoxication as a defense; Doc. 4., Att. 1, pp. 21–26;

>> c.     Counsel did not allow petitioner to testify; Doc. 4, Att. 1, pp. 26–29;

     d.  Counsel failed to sequester witnesses; Doc. 4, Att. 1, pp. 29–32;

     e.  Counsel failed to properly cross-examine two jailhouse informants; Doc. 4, Att. 1, pp. 32–35; and

     f.  Counsel failed to "perform various procedures which showed deficient and prejudicial performance." Doc. 4, Att. 1, pp. 35-39.

(3)    The evidence was insufficient to sustain the conviction. Doc. 12, pp. 6–11.

(4)    The trial court allowed biased jurors to serve and failed to grant a mistrial based on the prosecutor's comments during voir dire. Doc. 12, pp. 12–17.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

**A.  General Principles**

Federal courts of the United States have jurisdiction to entertain applications for writs of *habeas corpus* on behalf of a person in state custody only if that person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

When a state district court adjudicates a petitioner's claim "on the merits," this court is to review the state court adjudication under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson,* 150 F.3d 456, 471 (5th Cir. 1998). That statute provides that, when a state court has reached the merits of a constitutional claim, a writ of habeas corpus shall not be granted with respect to that claim unless the state court's adjudication resulted in a decision that was either: (1) contrary to clearly established federal law or involved an unreasonable application of that law; or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the

court failed to apply the controlling federal standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). The decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 125 S.Ct. 847, 851 (2005) (internal quotations omitted). In order for a state court's application of federal law to be unreasonable, the application must be so incorrect as to be objectively unreasonable. *Dilosa v. Cain*, 279 F.2d 259, 262 (5th Cir. 2002).

The second standard applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner must show that a reasonable factfinder must conclude that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 126 S.Ct. 969, 975–76 (2006).

**B.  Timeliness**

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek *habeas* review in federal court. 28 U.S.C. § 2254(d)(1). This limitation period generally runs from the date that the conviction becomes final. *See* 28 U.S.C. § 2254(d)(1)(A). The time during which a properly-filed

application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2254(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n.1 (5th Cir. 1998).

Furthermore the limitations period is not tolled for the period between the completion of state review and the filing of the federal *habeas* application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a *habeas* petition is time-barred under the provisions of section 2244(d), the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review; (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the State courts; and (3) the date upon which the petitioner file his federal habeas corpus petition.

In his Statement of the Case petitioner sets forth all applicable dates and concludes by asserting this matter is timely. Doc. 4, Att. 1, pp. 5-9. Similarly the state has set forth all applicable dates and has concluded that this petition was timely filed. Doc. 28, pp. 3–5; Doc. 28, Att. 1, pp 7–9. We have reviewed the information provided by both parties and similarly conclude that this petition was timely filed.

### C.  Procedural Default and Exhaustion of State Court Remedies

As preliminary matters, before we proceed to a consideration of the merits of the issues raised in the petition, we must also consider the doctrines of procedural default and exhaustion of state court remedies.

### 1.  Procedural Default

When a prisoner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, the prisoner may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546 (1991). A failure to satisfy state procedural requirements results in a forfeiture of a prisoner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter but rather is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred, ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal *habeas* claims. *Bledsue v. Johnson*, 188 F.3d  250, 254–5 (5th Cir.1999);  *O'Sullivan  v. Boerckel*, 119 S.Ct. 1728 (1999).

### 2.  Exhaustion of State Court Remedies

The federal *habeas corpus* statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886).

In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

Moreover, each claim must be presented to the state's highest court, even when review by that court is discretionary. *Castille v. Peoples*, 109 S.Ct. 1056 (1989); *Hatten v. Quarterman*, 570 F.3d 595, 605 (5th Cir. 2009). In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA—Const. Art. 5, § 5(a) ("The Supreme Court has general supervisory jurisdiction over all other courts . . . .")

Thus, in order for a Louisiana prisoner to have exhausted his state court remedies, he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner. *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir.1997), *cert. denied,* 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998). Exhaustion requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims. *Picard v. Connor*, 92 S.Ct. 509, 512 (1971).

### III.
### LAW AND ANALYSIS

Having already concluded that petitioner's application is timely we will now consider whether the issues raised by petitioner are properly before this court (whether or not they are

procedurally barred or have been exhausted in the state court) and, if so, then consider the merits of petitioner's claims based on the standards set forth above.

### A. Did the trial court err when it denied petitioner's Motion to Suppress two inculpatory statements?

Although the heading of this claim would imply that the trial court denied a Motion to Suppress filed on his behalf, petitioner's complaint is actually that no hearing was ever held on a motion filed by him in proper person and that the written confession was placed into evidence at trial. Specifically he complains of a statement given by him on July 25, 2005, after having invoked his right to counsel several days prior. He notes that two separate orders were issued by the district court at his request but that his court appointed counsel failed to have the issue properly raised.

Petitioner raised this issue on direct appeal. The court of appeal concluded that petitioner

> waived the pending Motion to Suppress when he proceeded to trial without a ruling on that motion. Additionally, the evidence at issue was admitted at trial without objection. Therefore, the issue was not preserved for appellate review pursuant to La. Code Crim. P. art. 841.

*State v. Jennings*, 958 So.2d at 146, *writ denied* 973 So.2d 731 (La. 2008). The article relied upon by the state court is a procedural rule that enjoys a presumption of adequacy when the court relies upon it in deciding not to review a claim. The Fifth Circuit, this court, and other Louisiana district courts within the Fifth Circuit have held repeatedly that the rule relied upon by the Louisiana court of appeal, commonly known as the "contemporaneous objection rule," is an independent and adequate state procedural ground which precludes federal *habeas* review. *See, e.g.*, *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002); *Grace v. Warden*, 2015 WL 2185207, *8 (W.D. La. 2015); *Landry v. Cain*, 2013 WL 1103276, *5-7 (E.D. La. 2013); *Jones v. Warden*, 2010 WL 817311, *10 (W.D. La. 2010).

Because petitioner has procedurally defaulted these claims we may refuse to consider the merits unless petitioner demonstrates that he should be excused from the application by showing cause and prejudice for the default or that a miscarriage of justice would result from denial of our review. *Coleman, supra*, 111 S.Ct. at 2565. In his "Traverse to State's Answer" (Doc. 29), petitioner addresses the state's affirmative defense of procedural default of this issue but mostly argues the merits of his claim that his statement should have been suppressed or excluded and not any circumstances that exist that should warrant this court's finding we should look past that procedural default. In that document petitioner alludes to the fact that he had filed a *pro se* Motion to Suppress (a fact supported by the record) but that his attorney did not go forward with that motion.[3] Petitioner does not state whether his counsel's failure to go forward with the Motion to Suppress (and his failure to contemporaneous object to the introduction of the confession at trial) was inadvertent or deliberate; however, whether deliberate or inadvertent the cost of those failures is the same – a procedural default imposed because this failure undercut the state's ability to enforce its procedural rules. *Murray v. Carrier*, 106 S.Ct. 2639 at 2647-2648 (1986), superseded by statute on other grounds (AEDPA). Cause for a procedural default requires a showing of some external impediment preventing petitioner or counsel from raising the claim. *Id.*[4]

This claim is procedurally defaulted and we recommend that it be dismissed.

**B.  Was petitioner unconstitutionally deprived effective assistance of counsel?**

The Sixth Amendment to the constitution embodies the rights of persons to a fair trial and a person's right to effective assistance of counsel is critical to preservation of those rights. *Powell v. Alabama*, 53 S.Ct. 55, 77 (1932); *Johnson v. Zerbst*, 58 S.Ct. 1019

---

[3] Petitioner raises this issue also in the context of his ineffective assistance of counsel claim discussed more fully below.

[4] This supposes, of course, that counsel's performance was not constitutionally ineffective, an issue discussed below.

(1938); *Gideon v. Wainwright*, 83 S.Ct. 792 (1963). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 104 S.Ct. 2052, 2064 (1984). Additionally, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2068.

Petitioner itemizes his representational deficiencies as follows:

1. Counsel did not advance a *pro se* Motion to Suppress filed by petitioner; Doc. 4, Att. 1, pp. 17-21;

2. Counsel did not raise the issue of petitioner's intoxication as a defense; Doc. 4., Att. 1, pp. 21-26;

3. Counsel did not allow petitioner to testify; Doc. 4, Att. 1, pp. 26-29;

4. Counsel failed to sequester witnesses; Doc. 4, Att. 1, pp. 29-32;

5. Counsel failed to properly cross-examine two jail house informants; Doc. 4, Att. 1, pp. 32-35; and

6. Counsel failed to "perform various procedures which showed deficient and prejudicial performance." Doc. 4, Att. 1, pp. 35-39.

Each of these issues was raised in petitioner's application to the state court for post-conviction relief. Doc. 28, Att. 6. This claim is therefore properly before this court. At a hearing on October 16, 2009, petitioner's trial counsel appeared and testified (following petitioner's waiver of privilege) at length as to the steps he took in his representation of petitioner.

### 1.  *Motion to Suppress*

With respect to the motion to suppress issue counsel testified that it was a strategic decision on his part, after discussion with and concurrence of petitioner, to **not** raise the issue of suppression of the confession about which petitioner complains. He notes what action he took in

investigation of the issue, what resources he utilized in considering how to handle the confession, and concluded his discussion with a recapitulation of his thought process on why his representation of petitioner should not include an effort to suppress that confession. See generally Doc. 28, Att. 6, pp. 173-77.[5] Therefore we do not find that counsel's performance was deficient in this matter.

### 2. Intoxication Defense

Counsel also addressed the intoxication defense in his testimony. On petitioner's behalf counsel filed a Notice of Defense of Voluntary Intoxication as he is required to do pursuant to Louisiana rules of criminal procedure.[6] Doc. 28, Att. 3, p. 62. In his cross-examination at trial of witnesses for the state counsel raised the issue of the defendant's substance abuse. *See, e.g.*, *id.* at 150 (cross of H. Dubroc), 223 (cross of M. Jennings); Doc. 28, Att. 4, p. 29 (cross of R. Frazier); *id.* at 112 (cross of D. Brown). In petitioner's defense counsel elicited testimony from a toxicologist concerning the findings from a urine sample taken from defendant on the date of the murder which indicated the presence of opiates and cocaine in petitioner's system. *Id.* at 140–43. In his opening statement counsel informed the jury of the testimony they would hear about petitioner's intoxication and the effect petitioner claimed his intoxication had on him at the time of the incident. Doc. 28, Att. 3, pp. 126–30. Counsel also argued the intoxication defense in his closing. Doc. 28, Att. 4, pp. 168–76. Petitioner's claim that counsel failed to advance the intoxication defense is simply untrue. Doc. 4, Att. 1, p. 24.

---

[5] Counsel testified that he concluded, and petitioner agreed, that the best course of action, given the overwhelming evidence against petitioner, would be to avoid any claim that petitioner had not committed the crime and focus instead on petitioner's intoxication at the time of the incident which would, hopefully, mitigate the specific intent factor of the crime with which petitioner was charged.

[6] La. C.Cr.P. Art. 726.

### 3. *Petitioner's right to testify*

The petitioner alleges that counsel refused to prepare him to take the stand and told him, "I am in charge of the defense and you're not testifying." Doc. 4, Att. 1, p. 28. However, the petitioner neglected to elicit any testimony on the issue at the 2009 evidentiary hearing, despite the fact that the claim was raised in his state collateral proceeding. Doc. 28, Att. 6, p. 43. His failure to provide any evidence in support of this claim, despite having the opportunity to do so, leaves us unable to give his self-serving allegations any merit.

### 4. *Sequestration of witnesses*

The petitioner alleges that counsel's performance was deficient because he failed to request sequestration of witnesses until after seven of them had testified. *See* Doc. 28, Att. 3, p. 161. Counsel admitted at trial that he "should have made [this motion] earlier." *Id.* We find no justification for this error and consider it serious enough to satisfy the first prong of *Strickland*. However, we cannot find that the petitioner was prejudiced. The record does not indicate who was in the room when testimony was given by the seven preceding witnesses.

Furthermore, the petitioner's allegations of testimonial influence seem of little consequence to the outcome of the case. One witness testified that she had encountered the petitioner shortly after the murder. *Id.* at 146. The only odd thing she noted was that he told her he was running late, even though he was on time. *Id.* The pre-sequestration witnesses also authenticated a 911 tape, described speaking to a family member who was concerned when the victim did not answer her phone, spoke to the condition of the corpse and the scene, and described seeing a vehicle that placed the petitioner at the victim's house. *Id.* at 131–60 (testimony until sequestration motion). However, the defense did not challenge the fact that the

petitioner had murdered the victim.[7] Instead it built its case around the element of specific intent, which had little basis in this witness testimony. *See* Section III.B.2, supra. In light of the evidence on this element and the petitioner's inability to establish a viable claim of intoxication – see Section III.C, infra – we are unable to find sufficient prejudice from any possible influence brought about by the lack of sequestration.

### 5.   *Cross-examination of jailhouse informants*

The petitioner contends that counsel was ineffective because he failed to cross-examine two jailhouse informants, Ron Deville and Savoie Jones, about an issue relevant to their credibility: whether they had received anything from the District Attorney's office in exchange for favorable testimony. He also alleges that there was a possible conflict, because counsel may have also represented Deville.

The record indicates that both informants had already been sentenced at the time of trial. Doc. 28, Att. 4, pp. 30, 64. The petitioner does not allege any pending charges against either witness. Thus we cannot find any indications that this inquiry was warranted. We also note that counsel used other matters to pierce the credibility of their accounts. At trial he elicited testimony from Deville that inmates often inflated stories of their crimes as a survival tactic and that the petitioner had actually related two or three different versions of the murder to him. Doc. 28, Att. 4, pp. 33–34. Counsel's cross-examination of Jones also resulted in an admission that the petitioner "never said he killed her." *Id.* at 70. We therefore decline to view the lack of inquiry into a possible deal with the District Attorney as unreasonable.

In order to prevail on an ineffective assistance claim based on a conflict of interest, a petitioner who raised no objection at trial "must demonstrate that an actual conflict . . . adversely

---

[7] Counsel stated in his closing argument: "We've heard lots of witnesses and they all essentially told you the same thing that I told you in my opening statement: Ronald Jennings killed Jeanette Hennigan." Doc. 28, Att. 4, p. 168.

affected his lawyer's performance." *Cuyler v. Sullivan*, 100 S.Ct. 1708, 1718 (1980). At the evidentiary hearing, counsel testified that he had not been appointed to represent any of the witnesses at the time of trial and that he could not remember ever having represented them. Doc. 28, Att. 6, p. 184. Petitioner provides no evidence to refute this, and so we do not find that a conflict existed.

### 6. *Cumulative error*

The petitioner contends that the cumulative effect of the errors raised above denied him effective assistance of counsel and prejudiced the outcome of the trial.[8] We have only found deficient performance under one of these claims, and we also found insufficient prejudice to show a constitutional violation. Accordingly, we cannot find cumulative error here. Ineffective assistance of counsel thus offers no basis for federal habeas relief.

### C.  Was the evidence insufficient to sustain the conviction?

The petitioner alleges that the evidence presented at trial was insufficient to support his conviction of second degree murder. This claim was raised in his application for post-conviction relief and decided on the merits. *See* Doc. 12, att. 1, pp. 2–6. Therefore we find that it is properly before this court.

A defendant's constitutional right to due process is violated when he is convicted of a crime without the state having met its burden of proof on every element of the offense. *Jackson v. Virginia*, 99 S.Ct. 2781, 2787 (1979) (citing *In re Winship*, 90 S.Ct. 1068, 1073 (1970)). We decide such claims by determining whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

---

[8] Under this claim, the petitioner also alleges that counsel failed to request judicial admonition that the jury refrain from discussing the facts of the case as they left on breaks and at the end of the day. However, the record shows that the judge issued such an admonition at the beginning of trial. Doc. 28, Att. 3, pp. 119–20. We do not find that counsel's performance was deficient for failing to request a superfluous warning.

beyond a reasonable doubt." *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000) (internal quotations omitted).

Here the petitioner was convicted of second degree murder, which includes the killing of a human being when the offender has specific intent to kill or inflict great bodily harm. LA. REV. STAT. § 14:30.1(A)(1). "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." *Id.* at § 14:10(1).

Under this claim the petitioner does not contest the evidence that he stabbed the victim to death. Instead he claims that, because he was in a drug-induced catatonic or dissociative state, there was insufficient evidence to support a finding of specific intent. Doc. 12, pp. 8–9. However, the jury heard testimony from a toxicologist that, while testing confirmed cocaine and opiates in the petitioner's blood, his level of intoxication at the time of the murder could not be proven. Doc. 28, Att. 4, pp. 142–44. Meanwhile, the petitioner's actions immediately after the murder also indicated that he had the presence of mind to commit acts that could be interpreted as covering his tracks.[9] The manner of killing also leaves little room for reasonable belief that intent to kill or inflict great bodily harm did not exist, if some kind of altered mental status cannot be proven. We therefore find that there was ample support for a finding of specific intent.

The petitioner claims in the alternative that he should have been convicted of manslaughter instead. Under Louisiana law, manslaughter includes a murder "committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." LA. REV. STAT. § 14:31(A)(1). The

---

[9] For example, the petitioner took his van to a carwash directly after leaving the victim's home, though he left before washing his van because he had to pick up his daughter. Doc. 28, Att. 3, pp. 175–76. Police later found blood in that van [*id.* at 188–89], which the respondent cites as support for the notion that the petitioner went to the carwash to clean physical evidence from his vehicle.

burden is on the defendant to prove the provocation that would downgrade his offense from murder to manslaughter. *State v. Perkins*, 85 So.3d 810, 817 (La. Ct. App. 3d Cir. 2012). This provocation is analyzed in the context of an ordinary person with ordinary self-control. *Id.* at 818. "[M]ere words or gestures, no matter how insulting, will not reduce a homicide from murder to manslaughter." *Id.*

The defense claimed that the murder was preceded by a verbal dispute between the petitioner and victim during which she accused him of being a bad father. Doc. 28, Att. 4, pp. 169–70. However, these allegations plainly fall short of the provocation required under Louisiana law. Given that provocation is viewed through the lens of an ordinary person, the petitioner's drug use is of no consequence here. Accordingly, petitioner's argument on this issue does not disturb our finding that there was sufficient evidence to support a conviction of second degree murder. This claim thus offers no basis for federal habeas relief.

**D. Did the trial court err in allowing biased jurors to serve and not ordering a mistrial based on the prosecutor's comments?**

We begin by noting here that our review is limited to the allegations in the parties' briefs.[10] The petitioner claims that his right to due process under the Fourteenth Amendment was violated when the trial court allowed two biased jurors to be empaneled and failed to order a mistrial based on allegedly prejudicial comments by the prosecutor. These claims were raised by

---

[10] It appears that the petitioner is the only one in possession of transcripts of any part of the *voir dire*, due to an error by the court reporter. Doc. 28, att. 1, p. 49. He has quoted from it in his supplemental brief to this court, but fails to provide a copy. *See* Doc. 12, pp. 13–17. However, we have no need of the full transcript. Even accepting all of the petitioner's allegations as true, we find that his claims fail to establish sufficient constitutional challenges.

     The petitioner complains of his lack of access to the "full" *voir dire* transcripts under this claim. However, we can find no constitutional injury: the petitioner was still able to develop the legal and factual basis for this claim and present it in his application for post-conviction relief. Doc. 28, Att. 6, pp. 36–38. It does not appear that the district court relied on any portions of the record, beyond what the petitioner alleges in his brief, in its ruling. Doc. 12, Att. 1, pp. 3–4. Accordingly, we have no evidence for determining that anything has been withheld from the petitioner. We thus find no violation of federal law and no basis for granting this issue further consideration.

the petitioner in his application for post-conviction relief and decided on the merits. *See* Doc. 12, att. 1, pp. 2–6. Therefore we find that they are properly before this court.

Jury selection, based on a finding that the juror is unbiased, is a factual determination made by the trial court. *Wainwright v. Witt*, 105 S.Ct. 844, 854–55 (1985). It is entitled to great deference on federal habeas review. *Id.* We thus review the admission of the two challenged jurors for objective unreasonableness.

The petitioner alleges bias on the part of two prospective jurors, Shannon Davis and Ryan Abate. During voir dire the defense challenged Davis and Abate for cause, which the trial court denied. Doc. 28, Att. 2, p. 26. The defense then exercised one of its peremptory challenges against Davis, who was excused from the jury pool. *Id.* at 26–27. The law makes no distinction over whether a juror is excused on a peremptory challenge or for cause, "[s]o long as the jury that sits is impartial." *Ross v. Oklahoma*, 108 S.Ct. 2273, 2278 (1988). As Davis was never actually empaneled, we find no merit in the claims of a constitutional violation resulting from her alleged bias. Accordingly, we decline to give it any further consideration.

Meanwhile Abate was accepted and empaneled by the trial court. Doc. 28, Att. 2, pp. 26–27. He apparently indicated that his company "does work for" the District Attorney's Office and that he was "pro-law enforcement." Doc. 12, p. 14. When asked whether he could judge the case solely on information received at trial, Abate replied "[t]hat is very hard to say." *Id.* The defense was entitled to twelve peremptory challenges. LSA-C.Cr.P. Art. 799. It used only eight and failed to raise one against Abate. Doc. 28, att. 2, pp. 23–27.

Abate's comments do raise some concerns; however, based on the deference to which the trial court's determinations are entitled, we cannot find that it erred in denying the challenge for cause. A juror is biased if his views "prevent or substantially impair the performance of his

duties . . . in accordance with his instructions and his oath." *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000). Here we have a statement from Abate that he was "pro-law enforcement" and that his company did some work for the District Attorney's Office. Yet there is no claim that he stated that he would give testimony of law enforcement witnesses undue weight. His other statement, about limiting his judgment to what was presented at trial, is not tied specifically to enforcement bias. It might have related to media reports or community awareness of the crime. However, the trial court found him to be nonetheless competent. The defense, in failing to use a peremptory challenge against him, must have agreed.

Abate's comments give us no compelling reason to disturb the trial court's findings, particularly in light of the court's opportunity to observe the juror's demeanor and hear all of his responses during voir dire. Accordingly, we find that it did not err in denying the challenge for cause.

The petitioner also claims that the prosecutor made an unauthorized reference to a possible theft during the murder which prejudiced him in the mind of the jury pool and should have provided grounds for a mistrial. He contends that the theft allegation was repeated when his taped confession was played at trial.

"To establish that a prosecutor's remarks are so inflammatory as to have prejudiced the substantial rights of a defendant, a habeas petitioner must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that absent the remarks, a conviction probably would not have occurred." *Byrne v. Butler*, 845 F.2d 501, 508 (5th Cir. 1988). The petitioner cannot satisfy either arm of this test. He alleges only one improper statement by the prosecutor and one reference included in the video from his own statements. We see no basis for determining that two occurrences should rise to the level of "persistent and

-19-

pronounced misconduct." Additionally, we have already found that there was sufficient evidence to support the conviction. See Section III.C, supra. Therefore we find no error in the refusal to grant a mistrial and conclude that this claim offers no basis for federal habeas relief.

## IV.
### CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that the application for the writ of *habeas corpus* be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from the service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 22nd day of December, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE